| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **FOR PUBLICATION** |

---------------------------------------------------------x

*In re:*  :

Michael Ginn,  :  Chapter 13
  :  Case No. 19-22201
  :
            *Debtor*  :

---------------------------------------------------------x

### MEMORANDUM DECISION DENYING MOTION TO MODIFY
### AND GRANTING MOTION TO DISMISS

**A P P E A R A N C E S :**

*Debtor*
Natasha Meruelo
303 S. Broadway, Suite 450
Tarrytown, NY 10591
        By: Natasha Meruelo

*Standing Chapter 13 Trustee*
399 Knollwood Road, Suite 102
White Plains, NY 10603§
        By: Thomas Frost

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Debtors motion to modify his plan and a motion to dismiss for cause. The standing chapter 13 Trustee (the "Trustee") asserts that Debtors conduct during the pendency of the case, specifically the pattern of material misstatements in his court filings, are evidence of bad faith and constitute dismissal for cause. The Trustee argues that the motion to modify should be denied for the same reasons. For the reasons set forth below, the motion to dismiss is granted and the motion to modify is denied.

### Jurisdiction

This Court has jurisdiction over this contested matter under 28 U.S.C. § 157, 28 U.S.C. § 1334 and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska

dated January 31, 2012. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and one over which this Court has authority to enter a final judgment.

## Background

Michael Ginn ("Debtor") filed a Chapter 13 petition with this Court on February 4, 2019. Voluntary Pet., ECF No. 1. Debtor's first chapter 13 plan provided for 60 payments of $1,500. Model Chapter 13 Plan 2, ECF No. 5. This figure was supported by Debtors schedules which showed monthly income of $12,275.00 and monthly expenses of $10,770.00. Schedules, ECF No. 3. One of Debtor's monthly expenses was for his mortgage payment to PNC Bank, NA ("Secured Creditor") in the amount of $5,000. *Id.* An order granting Debtor's loss mitigation application was entered on February 21, 2019. Order, ECF No. 16. Debtor participated in loss mitigation for nearly two years and an order granting Debtor's motion to approve a loan modification was entered on January 19, 2021. Order, ECF No. 72. The modification resulted in a new principal balance of $1,123,289.12, which was an increase of $72,062.78 from the pre-petition balance of $1,053,226.34. Mot. Dismiss ¶ 14, ECF No. 143.

Following the modification, Debtor filed amended schedules to reflect his increased mortgage payment. Am. Schedules, ECF No. 68. Debtor altered his expenses which resulted in a nearly identical discretionary income to his original schedules, despite his mortgage payment increasing by $917.56. *Id.* Debtor simultaneously filed a new plan which provided for a slightly increased plan payment in the amount of $1,525.00. First Am. Plan 3, ECF No. 69. Debtor indicated on the plan that he would remain post-petition current with his mortgage. *Id.*

In May 2021, Secured Creditor filed a lift stay motion stating that Debtor was in arrears on post-petition mortgage payments from November 1, 2020 through March 1, 2021 in the amount of $29,587.80. Mot. for Relief, ECF No. 80. To cure the missed mortgage payments,

Debtor filed a motion to amend and extend his chapter 13 plan pursuant to the CARES Act. Mot. to Amend, ECF No. 83. After opposition to a second amended plan, Debtor's third amended plan set forth payments of $1,500 for 29 months and $2,100 for the remaining 55 months. Third Am. Plan 2, ECF No. 91. The plan indicated that Debtor would remain current on post-petition mortgage payments and cured $52,530.93 in mortgage arrears for November 2020 through July 2021. *Id.*

The following year, in May 2022, Secured Creditor filed another motion to lift the stay stating that Debtor was delinquent for August 2021 through April 2022. Mot. for Relief, ECF No. 106. Debtor had not made a single mortgage payment since the amended plan was put in place the preceding year. *Id.* Debtor again modified his plan to cure these arrears and extended the length of the plan. Fourth Am. Plan 2, ECF No. 113. The plan indicated that Debtor would remain current on post-petition mortgage payments and would pay $104,145.73 to Secured Creditor through the plan which represented all mortgage payments between November 2020 and May 2022. *Id.* The plan included payments of $1,500 for 29 months, $2,100 for 10 months, $2,500 for 45 months, and a final lump sum payment to the Trustee of $40,000. *Id.*

In November 2022, Secured Creditor filed a third motion for relief stating that Debtor was in arrears in the amount of $18,639.84 from July 2022 through September 2022. Mot. for Relief, ECF No. 106. Based on these dates, it appears that Debtor made a single mortgage payment and then defaulted again. The Court granted the motion for relief. Order, ECF No. 126.

On May 10, 2023, Debtor filed amended schedules, an amended plan, and a motion to modify his confirmed plan. Am. Schedules, ECF No. 130; Mot. to Modify, ECF No. 128; Fifth Am. Plan, ECF No. 129. In this plan, Debtor proposes surrendering the property, reducing the

length of the plan from 84 to 60 months, and removes the $40,000 lump sum payment. Fifth Am. Plan. Debtor's schedules showed peculiar income and expense changes including:

- Decrease in income to $10,000 per month
- Decrease in homeowner expense by $3,113.28
- Decrease in home maintenance by $70.00
- Decrease in electricity, heat, natural gas by $480.00
- Removal of water, sewer, garbage collection by $120.00
- Increase in food and housekeeping supplies by $200.00
- Increase in transportation by $100.00
- Additional estimated taxes due in the amount of $2,083.00
- Additional caregiving expense in the amount of $500.00

Am. Schedules. These changes resulted in plan payments to be lowered from $2,500.00 to $1,600.00 per month. Fifth Am. Plan.

Upon inquiry, the Trustee's office discovered that, despite adding a rental expense of $3,100, the Debtor had no plan to rent another residence or leave the property and anticipated staying rent-free until the property was foreclosed upon. Mot. Dismiss ¶ 31, ECF No. 143. When the Trustee's office requested an updated budget reflecting actual expenses, the budget showed a nearly identical disposable income as the previous budget even though the rent expense was removed entirely. *Id.* ¶ 33.

The Trustee filed opposition to the motion to modify and also moves to dismiss the case for cause, specifically Debtor's material misstatements in court filings and bad faith. Opp'n, ECF No. 145; Mot. to Dismiss.

Debtor filed an affirmation to his motion to modify explaining various terms of unemployment, payments not made to him by employers, and other financial hardships he has experienced throughout the case that give explanation to his failure to make mortgage payments. Reply ¶ 4–34, ECF No. 150. Debtor submits that he has not acted in bad faith or engaged in a pattern of material misrepresentations, just that he has continued to have financial troubles and has struggled to care for his family as a result. *Id.* ¶ 40.

Debtor filed an objection to the motion to dismiss outlining the timeline of events and various motions to amend. Reply, ECF No. 154. Debtor's argues that Debtor was forthright throughout those amendments about the financial situation. *Id.* ¶ 4–29. Debtor argues that, because he is not a serial filer nor did he conceal any assets, the Court should not find bad faith. *Id.* ¶ 30–46. It was only after many attempts to keep the home and stabilize his employment situation, the Debtor argues, that he finally relented to the fact that he could not save his home. *Id.* ¶ 38. Debtor contends that all of his various filings were all true at the time they were made. *Id.* ¶ 37.

## **Discussion**

Motion to Modify

Modification of a debtor's chapter 13 plan after confirmation is controlled by 11 U.S.C. § 1329. This section allows the debtor, trustee, or a holder of an allowed unsecured claim to bring a request for modification in order to, among other reasons, either increase or reduce the amount of payments on claims of a particular class. 11 U.S.C. § 1329(a). Modification of a plan under Section 1329 is discretionary and is only subject to a few general limitations: the plan must be modified in one of the ways specified under § 1329(a)(1)-(4), the modification must comport with the provisions listed in in § 1329(b)(1), and the modification must not result in a plan

providing for payments longer than the period specified in § 1329(c). *Germeraad v. Powers*, 826 F.3d 962, 970, 973-74 (7th Cir. 2016). The purpose of Section 1329 is to allow modification of a confirmed plan should circumstances change during the life of the plan. *Martinez v. Viegelahn*, 581 B.R. 486, 495 (W.D. Tex. 2017).

In the past, courts in this district limited grants of modifications to "situations in which there has been a substantial and unanticipated change in the debtor's income or expenses that was not anticipated at the time of the confirmation hearing." *See In re Solis*, 172 B.R. 530, 532 (Bankr. S.D.N.Y. 1994). In *In re Salpietro*, 492 B.R. 630, 636 (Bankr. E.D.N.Y. 2013), Judge Grossman determined that the "substantial and unanticipated test" should not be the threshold for determining whether to modify a chapter 13 plan post-confirmation. Instead, that court held that it had discretion to determine when post-confirmation modification was appropriate, within the bounds of the statute. Judge Grossman cautioned that the court's discretion in approving modification under Section 1329(a) must be "guided by a respect for the finality of the confirmation process balanced by the powers bestowed on a bankruptcy court to issue orders necessary to prevent an abuse of the bankruptcy process and enforce Court orders." *Id.* at 637.

Courts have allowed Debtors to modify their confirmed plan to surrender collateral to the creditor that renders the creditor unsecured. *In re White*, 169 B.R. 526 (W.D.N.Y. 1994). Here, Debtor seeks to surrender his home in full satisfaction of his debt to Creditor. The current value of the property and the balance on the mortgage is unclear on the papers.

Here, Debtor's history of misrepresenting his intentions to stay current with his mortgage and manipulating his schedules to allow for lower payments led the chapter 13 Trustee to file a motion to dismiss for cause. It is the Trustee's position that Debtors petition and repeated filings after confirmation were not done in good faith.

In exercising its discretion, the Court should recognize that Debtor never seemed to respect the finality of the confirmation process and repeatedly amended his plan to abuse the bankruptcy process. *In re Solis*, 172 B.R. 532. Debtor managed to keep his plan payment low while holding on to $5,000 in disposable income each month that was meant to go to Secured Creditor in the form of mortgage payments. Debtor now seeks to simply surrender his home and in full satisfaction of the mortgage, essentially pocketing all the past mortgage payments that may have been paid into the plan and distributed to creditors. Regardless of the series of events to which Debtor now attests, the filings tell a different story about the state of Debtor's financial situation. Those filings are what this court relied upon when allowing the various amendments. Regardless of what Debtor now argues, based on the filings, it appears he never intended to keep his home throughout the bankruptcy process, but rather use his home to make his disposable income look lower than it was. The Court denies Debtor's motion to amend.

<u>Dismissal for Cause</u>

Section 1307 of the bankruptcy code provides that, on "request of a party in interest . . . the court may dismiss a case [under chapter 13] for cause . . . ." 11 U.S.C. § 1307. The statute provides an enumerated list of occurrences which constitute sufficient cause, but that list is not exhaustive. *In re Grasso*, 497 B.R. 448, 455 (Bankr. E.D. Pa. 2013). Most Circuits have held that a chapter 13 case can be dismissed if it is not filed in good faith. *Alt v. United States* (*In re Alt*), 305 F.3d 413 (6th Cir. 2002); *In re Lilley*, 91 F.3d 491 (3d. Cir. 1996); *In re Eisen*, 14 F.3d 469 (9th Cir. 1994); *In re Love*, 957 F.2d 1350 (7th Cir. 1992); *Cabral v. Shamban* (*In re Cabral*), 285 B.R. 563 (B.A.P. 1st Cir. 2002). So too has this Court. *In re Husney*, Case No. 17-23907, Bench Ruling on Trustee's Motion to Modify or Dismiss, ECF No. 91.

To determine whether the filings were made in bad faith, the Court must review the totality of the circumstances. *In re Eatman*, 182 B.R. 389, 392 (Bankr. S.D.N.Y 1995). Dismissal based on lack of good faith is made only in the most egregious cases entailing concealed or misrepresented assets and income, excessive expenditures, and lavish lifestyles. *In re Lin*, 499 B.R. 430, 435 (Bankr. S.D.N.Y. 2013). The moving party bears the burden of proof to show lack of good faith. *In re Love*, 957 F.2d 1350, 1355 (7th Cir. 1992).

The determination of bad faith is highly factual and sweeps broadly. *Lin*, 199 B.R. at 436 (citing *C-TC 9th Ave. P'shp. v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304, 1312 (2d Cir. 1997)). Courts look to a variety of factors to determine whether there is a lack of good faith, most commonly focusing on how accurate and forthcoming the debtor was with the Court in representing facts concerning debts, income, expenses. *See, e.g., Lin*, 499 B.R. at 436 (*citing In re Klevorn*, 181 B.R. 8, 11 (Bankr. N.D.N.Y. 1995)); *In re Prisco*, No. 1:11-CV-00474 (LEK), 2012 U.S. Dist. LEXIS 136079, at *11 (N.D.N.Y. Sep. 24, 2012); *In re Ajunwa*, No. 11-11363 (ALG), 2012 Bankr. LEXIS 4096, at *11 (Bankr. S.D.N.Y. Sep. 4, 2012); *Ellsworth v. Lifescape Med. Assocs., P.C.* (*In re Ellsworth*), 455 B.R. 904, 917 (9th Cir. B.A.P. 2011). Courts also look to the Debtor's history of filings and dismissals, whether the debtor intended to defeat a state court litigation, *Ellsworth*, 455 B.R. at 917, and whether the debtor's bankruptcy is a two-party dispute. *Lin*, 499 B.R. at 437.

Here, the facts and filings paint a damning picture. Throughout the entirety of Debtors case, for over four years, Debtor represented to the Court that he was paying his mortgage. In that four-year period, Debtor made a single mortgage payment. Though Debtor was in loss mitigation for a period, "simply because loss mitigation is pending or allegations regarding validity have been made does not relieve a debtor from their obligation to make postpetition

mortgage payments." *In re Reyes,* 651. B.R. 99, 110 (Bankr. S.D.N.Y. 2023). Each time he amended his plan he affirmed that he would make ongoing payments and almost always, save making one mortgage payment in July of 2022, failed to do so. Each time Debtor's arrears were rolled into a new plan, Debtor's schedules were conveniently amended to keep his plan payment virtually the same, despite withholding $5,000 in mortgage payments from Secured Creditor each month.

Based on the filings, Debtor's disposable income was never between $1,500 and $2,500. It was between $6,500 and $7,500 because he never paid his mortgage. At best, if the Court were to believe Debtor's new representation of events, it would appear that Debtor would not have qualified for chapter 13 relief to begin with. If the Court were to allow Debtor to modify his plan, surrender his home, and receive a discharge at this juncture, it would be endorsing a tactic that flagrantly exploits the bankruptcy code. If followed by future Debtors, this pattern of behavior would allow Debtors to feign an attempt at saving their home through bankruptcy, significantly reduce their plan payments throughout the life of the plan and receive a discharge without paying the dividend to which their unsecured creditors are entitled.

Debtor argues that he was honest and forthright throughout the previous amendments, but by his own recollection it is clear that he was not. If Debtor was either perpetually unemployed, consistently laid off, or regularly unpaid, the income on his schedules should have changed significantly. Debtor's income did not change on his schedules; it remained substantially the same. The Court can only presume that Debtor represented that he had sufficient income to pay his expenses and plan payments so the various amendments to his plan would not be opposed by the Trustee or denied by this Court. The Debtor used those misrepresentations to receive the benefit of the bankruptcy process. If the Debtor had been honest about his financial situation

when the amendments were made, the Trustee and this Court would have responded differently. Debtor has not been forthcoming with this Court. Debtor's filings show that he has attempted to abuse the bankruptcy process and those filings were not made in good faith.

## Conclusion

The motion is denied. The Trustee shall submit an order consistent with this opinion.



**Dated: September 18, 2023**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**